Good afternoon, everyone. My name is Whitney Jonas. I'm the Corporate Deputy to this session today. Our panel today is Judge Canby, Judge Clifton, and Judge Grisham presiding. We have with us, arguing for the federal appellant, Buck Slungey, Special Counsel to the United States Attorney General. Buck Slungey, are you on the call? I'm here. Thank you. And for the state attorney plaintiffs, we have Noah Friskell, the Solicitor General from the Office of the Washington State Attorney General. Procuring from Washington, Mr. Friskell, are you here with us on the call? I am, yeah. Thank you both. Counsel for each side will have a total of 30 minutes, including any signs that you can tell us how solutions are served for a felon. Counsel, here's what's possible for keeping track of their own time, especially since they can't see the clock. I can see the clock, and the judges can't see the clock. We'll try to help you, but you need to track your time as well. When you speak, attorneys need to state your name before you speak, as well as when you back up or go. And also, please listen very carefully for questions coming from the panel. You won't be able to see them indicating intentions, so they will have to interrupt you for that. A reminder to everyone, we are streaming this presentation live through our website. It's also streaming live on ARIES. If you found that, we will post a recording of the audio as soon as we can after the session on our website. What you will see on the screen, if you're looking at a screen while you're presenting, is who is the name of the recipient. So, we will try to keep up with that and post a percentage rate where our judges can. We will now call the discussion to order. And so, please wait for the sign-in section of the session before you ask your question. The United States Court of Appeals for the Ninth Circuit is now in session. Good afternoon. The case on our emergency motion document today is the State of Washington et al. v. State of Oklahoma et al., case number 17-35105. This is Judge Freeland, presiding by telephone. Judges Candy and Clifton are also on the line. We thank you, counsel, for your very helpful briefing and for appearing today on short notice. As you have heard, you'll come through in a minute. And I will try to help you with your time because I know you can't see a timer like you would in the courtroom, but if you could also please try to watch the time yourself, that would be great. With that, we will hear first from the government. Mr. Blenjey, please proceed. Thank you for your report. I'm August Blenjey with the Justice Department here on behalf of the United States. I'd like to reserve five minutes for rebuttal. The executive order at issue puts a temporary pause on entry for individuals from single countries that Congress and the last president determined, in a similar context, pose special risks in terms of terrorist infiltration into our country. Both determinations were made in 2015 and 2016. I speak on a congressional determination. Of course, statutory factors, including foreign terrorist organizations, had significant presence in the country where the country served as a safe haven for terrorists. The order also temporarily halted refugee programs. This changement was well within the president's power as delegates to combat Congress. It is constitutional, as the court in Boston in the Loyal Column recently held. Under Section 212F, Congress has expressed it authorized the president to suspend entry of classes of aliens when it is necessary or when otherwise it would be detrimental to the interests of the United States. That's what the president did here. And the president's determination that a meeting-day pause was needed for the second country at issue here in order to ensure adequate standards, and that's language from the order, for the visa screening was plainly constitutional. The district court's order, which contained no assessment of the legality of the order, was in error, and we encouraged the court to stay. A key factor in the order, which is temporary in nature, was the president's determination that there was a need to review existing practices for screening foreign nationals who applied for visas. The order that you're asking for a stay of the temporary order at the district court, no matter which way we will stay, particularly that appeal of the order, is that correct? Sometimes I get the impression in the papers that we're trying to argue in terms of the appeal itself rather than the merits of the stay. Yes, Your Honor. There is some overlap, but yes, we are at this point just asking for a stay and a review by this court. Of course, the standards are pretty similar since both would look at the traditional instruction standards. With respect to those standards, I do want to tell you there are two kind of significant irreparable injuries that we are citing in support of our request for a stay. The first irreparable injury has to do with the assessment of risk that the president made in balancing our interest in welcoming people into this country with our interest in making sure our procedures are secure so that the risk of terrorism is acceptable. The president struck that balance, and the district court's order has upset that balance. It's the traditional national security judgment that is assigned to the political branches and the president, and the court's order immediately altered that. Have you offered any evidence to support this fact to me that you're describing for the executive order, or are you really arguing that we can't even ask about whether there's evidence because this decision is not reviewable? Sure. The order itself includes findings. Those findings recognize the crucial role that screening presents in the visa process. They recognize that numerous foreign-born individuals have been convicted or implicated in crimes since October 11th. It recognizes that deteriorating conditions in certain countries create further problems. So the order created a cause so that the screening process could immediately be reviewed to ensure it's adequate. Has the government provided any evidence correcting these countries with terrorism? These proceedings have been moving very fast. And the strongest point on that is that in 2015 to 2016, both Congress and the administration made determinations that if these seven countries posed the greatest risk of terrorism, and in doing so restricted visa waiver to people who had even traveled to those countries over the last five or six years, the executive order relies on that determination. And that is, I think, the strongest type of reliance where the president is relying on Congress's determination that these are countries of concern and Congress's procedures to identify countries of concern based on significant terrorist activity in the countries. So it's a textbook, and I understand the concept of that, but it's pretty abstract. And it's not like there hasn't been processes in place to take some care of people coming from those countries. Those are the determinations in the statute by the prior administration you're pointing to. Is there any reason for us to think that there's a real risk or the circumstances have changed such that there would be a real risk if existing procedures weren't allowed to stay in place while the new administration conducts its review? Well, the president's determined that there was a real risk. That's why the president determined that the bus course was a temporary, it's short-held in entry for 90 days while these procedures are looked at. It's understandable. The president comes into office with an obligation to protect the national security of our country. He understands and explains in the order that these visa screening procedures are crucial. Can the president understand that Congress identified these seven countries, as well as in 2016 the president? It's understandable. Of course, looking at the end of those seven centuries, what Congress did was to provide that people from those countries had to get visas. In other words, they couldn't do something in the country without a visa. And they're permitted, of course. They're going to be able to get somebody a visa. In the transcript of the hearing in the district court, the district court asks the representative of the Department of Justice, in the hearing of the Department of Justice, how many federal offenses have been committed by people who came in with visas from these countries? And the other answer is no such thing. Yes, Your Honor. These prosecutions have been moving quite fast, and we're doing the best we can. The prosecutions are moving fast, but you have known us before you continued in the district court to develop the record. So why should you be hearing this now if it sounds like you're trying to say you're going to prevent Americans later? I was just about to at least mention a few examples. There have been a number of people from Somalia connected to al-Shabaab who have been convicted in the United States. Is that in the record? Can you point us to what we're in the record here? It is in the record. There is also other examples. But, again, you're correct. These are not in the record. The reason we sought immediate relief to this day is because the district court's decision overrides the President's national security judgment about the level of risk, and we've been talking about the level of risk that is acceptable. As soon as we're having that discussion, it should be acknowledged that it's the President, it is the official that is charged with making those judgments. I'd also like to talk briefly. I talked to Archie, and the President said that regarding the reasonable. The reasonable? Yes, there are obviously constitutional limitations, but we're discussing the risk assessment. What are the constitutional limitations that the government acknowledges? Well, I would say that the plaintiff has asserted various constitutional limitations. And I think the case that is most on point as far as constitutional interests are Mandel and Ginn. And in those cases where you have a U.S. citizen raising a claim, the court looks only at the U.S. citizen's constitutional claim and even then looks at whether the decision is facially legitimate in bona fide. The executive order here meets that standard easily. It relies on justice. So is there any fact sheets by Congress that set forth specific criteria that were then applied factually for an issue? Does the President not apply any specific criteria by Congress here at least? Yes, the President does. The President is applying Section 212-F, which authorizes the President to suspend entry of classes of aliens if their entry would be detrimental to the interests of the United States. Now, the Supreme Court recognized that Congress and the President share the act of exclusion of aliens as a fundamental act of sovereignty that Congress and the President work within the powers of Congress and the President. So our point would be that there's limited review, and the executive order and most limited review in the executive order easily pays attention. That would only be true if there's a… What kind of limited review do you acknowledge is appropriate? We're not acknowledging any review on the basis of this case because of a lot of standing and other problems with the state bringing the claim. What we acknowledge is Ms. McGill conducted a limited review to see that the decision was bona fide and legitimate. Have there been attributions here of that case? Has the President, Mandel, and Jim, the Congressmen, envisioned that that would be the case we would need to look at? When reviewing executive order of the President under Section 212-F, the review should be confined to the four corners of the document to determine if the decision itself, the executive order's findings, have any issues with respect to the standard. And, again, I'm sort of confused of our position. This would be if there is a party in the U.S. with standing to raise their own constitutional claims, and there are problems at each step of that analysis. The state of Washington doesn't have these kinds of constitutional interests. The state of Washington can't bring a foreign patriot suit on behalf of its citizens in this context. And Washington, as far as I'm interested, for a second here, there's some job in the Supreme Court cases of quasi-sovereign interests. And, for instance, the state might have an interest in food here. And when it sues to put up its hair, it's necessarily acting for its citizens. The state itself can't spell hair. It can't see hair. It has to be acting on behalf of its citizens. When it brings a case like that, yet there seems to be authority for the state to bring that. I have a point. Well, the problem in the immigration context, and actually more generally, is a third party can't challenge visa denials or revocations. The claims at the state is a three-hour session. The whole point of the Dem case was that he, himself, or rather his husband, couldn't challenge, but he could. And three justices in the court were prepared to throw it out as the first step. But the other six justices were not. They took out the claim. Twice, the state of Washington in a conflict position, saying it's the proprietor of the state universities, having the same type of interest that the scholar plaintiffs did in Mandel. Well, the problem is, is because the state's asserting a parents-patriot theory, where. Is there also a sense that it's the proprietors of the university and otherwise tax revenues? Yes. Well, let me finish with the first theory, and then I'll get to that. The parents-patriot theory assumes you're asserting the rights on behalf of the beneficiary. But there's well established law that, in the immigration context, the sort of third-party interest and the case open and disruptive is not something that can be asserted. I also suggest that the interior stand asserts exactly that. I mean, the interior stand, the plaintiff's stand, was the right of the person who was excluded. So the person who was excluded may not have had an interest that he could assert directly, but his wife was allowed to. In the state, I mean, the state doesn't have the sort of constitutional rights that the wife and son had. The wife and son had their own. But why is the state's right the same as the scholar's in Mandel? Mandel was a foreigner. He might not have had rights, but the court took the case up because people who argued they wanted to be able to hear him, the various universities to which he'd been advised, the University of Washington, watched this thing by people. Why doesn't the state of Washington have the same standing that the scholars did in Mandel? Again, you have to look at sort of the right of the state. As I was discussing the right of the state on behalf of the people, they must experience, too, on behalf of its sort of collapsing inquiry. I understand you're moving away, or I'm dragging you away from the parents, moderators there, speaking for myself. I agree with you on that. The state can't do that. But the state is also asserting a proprietary interest in particular as the owner and operator of the universities. And it seems to me that you line up very much the way the plaintiffs in Mandel did. Well, on that point, our claim is that he doesn't have a judicially cognizable or legally protected interest in third-party immigration benefits. This is actually the same case that was raised in Curie v. Depp, and the majority of the court didn't think that that was an immigration case. Mandel was an immigration case both involving visas and others. And yet the notion came up. Sure. You don't have to talk about what the constitutional interest of the state entity is. And it's well established that there's no due process. Why is it limited to the state entry? In Dems, it wasn't asserting her own rights. She was asserting her husband's rights. Sorry. It was her right as to why, citing the laws of distortion and so forth, that the main denial was to her husband. In this case, the state of Washington is claiming that it's going to hurt the university if it's not able to have these people come to the university. That sounds very much like the same kind of right that was asserted in Mandel. Well, hurting the university isn't enough now that we've turned on to the actual challenge. The state has to assert that. The state has to have a constitutional interest because, in Dems, it was the constitutional interest of the U.S. citizen spouse that the court was looking at. And if you look behind. Was there a constitutional interest in peers versus society concerns where the school was obliged to assert the rights of the students and their families? That was a case where, if I remember correctly, the university was acting on behalf of challenging a state law that affected its students. There you would have constitutional interest for the students at the school. Here, aliens would not. I do want to turn to Harry. Harry's question. Why haven't we reached the merits question? If the reasons are regarding stand-in efforts by the university, have you faced the university's department's issues? I think that's tied up together a little bit because of the well-established authority  And even on the merits, I would like to point out that the executive order relied on the congressional and administrative determination of years ago of 2015 and 2016. So it's not an order that discriminates on the basis of religion, and there would not be a valid equal protection. Before I run out of time, go ahead. Would the president simply stay in the order without conveying any message? That's not what the order does here. I know. The order relies on I'm sorry, you're on. How do you do that? How do you do that? That's not what the order does here. Anybody here? What does that say? That's not what the order does here. I know you really feel. I do want to answer one key point. Well, my kids would answer that question because it speaks back to the standing issue. The order said Muslims cannot be admitted. Would anybody have standing to challenge that? Ma'am, darling, didn't give a root to make a constitutional challenge if there were such an order. It would be by a U.S. citizen with a connection to someone seeking entry. This is a far cry from the situation. I'm not sure I got it. Do you have a purpose in standing doctrine? Are you standing it because you share adversity? Is there any purpose for your argument that we shouldn't recognize the equality of unsafe and we should advocate for individual freedom to take away? What's the purpose of that? Well, there needs to be a concrete, legally protected interest that's judicially cognizable. And, I mean, across the country there are many lawsuits where there clearly is standing. There are people impacted by this order, and there are cases across the country where we don't have these types of standing arguments. But in this case, there's a lot of law that says states can't step into the shoes of their citizens in this context. We have the sort of proprietary interests are very diffuse, and if we credit them there would be almost no limitations on standing. In that context, it doesn't make sense to extend standing jurisprudence to cover this kind of situation. But I'm not sure I'm convincing the court. So I want to make one really key point with regard to the injunction, and that is that it is overbroad and should be immediately stayed to the extent it is overbroad, even if the court thinks some applications of the order are problematic. The state has admitted that people abroad without prior U.S. contacts do not have rights that could be asserted by them, and we agree. In the district court, the state center claim is primarily focused on the people who are here or here and left. Cal Appeal to States went further, explaining, quote, this case, by contrast to cases on entry, involves longtime residents who are here and have constitutional rights, end quote. That is the nature of the state's claim. The injunction goes far beyond that. If he's explaining that the section of order violates the establishment clause, if that's true and it can't meet the standards that the establishment clause would impose, then wouldn't it be invalid policy? You heard the state has said that their case, quote, involves longtime residents who are here and have constitutional rights, end quote. That is from their brief at page 10. If that is the scope of the injunction, then that is the scope of the injunction. The scope of the injunction, whether it's information-wide or anything else, should be limited to the scope of what the state itself says it is kind of representing through its various theories of standing. But issuing a broader injunction violates the principle that an injunction should only be as extensive as is necessary to fully remedy the claims of the parties. Any of the declarations indicate that the state universities invite foreign scholars to come to the state and make presentations, come for a time, go back, and if they want to continue doing that, which means that there will be future invitations to scholars who may not yet have a connection. Well, there are some declarations along those lines, but I am describing the actual statement of the extent of their suit that they made in the brief to this court. And to the extent that is the relief they seek, this court should immediately stay the relief that extends broader, and that is to people who have never been to the United States, and Section 5 of the order, which is the refugee provision and applies to people who haven't been here yet and don't have those relations with the university and don't, quote, involve long-term residents who are here and have constitutional rights. I'm into my rebuttal time, but I would strongly encourage the court, even if it has concerns with the government's position, that it immediately stay the portion of the injunction that applies outside the boundaries of the U.S. and extends beyond people who are in the U.S. or who have been in the U.S. Thank you. Thank you. Mr. Purcell? Yes, Your Honor. May it please the Court. I'm Morrison, State Solicitor General, Milo Purcell, on behalf of the state's Appalachian group in Minnesota. Your Honor, it has always been the judicial branch's role to say what the law is and to serve as a check on abuses by the executive branch. That judicial role has never been more important in recent history than it is today. But the President's executive court has to keep that role here to reinstate the executive order without meaningful judicial review and to throw this country back into chaos. The court should decline that invitation. The next thing I'd like to first discuss is why the court should reject the motion on jurisdictional grounds and then explain why, even if the court does consider the motion, the court should reject comment on it. So, starting with fealibility, the plaintiffs have pursued the criminal remedy of seeking to stay in this court regardless of their name. Of course, the plaintiffs have no illicit appeal. There is no motion for stay. Mr. Chancellor, why should we do it? We represent a district court. It's a district court. It's an order requiring all the public schools in the state of Washington to be closed because of some concern about a flu epidemic. And did it inform the TRO? And said the TRO would only last less than 14 days. Are you suggesting that name is the only form of relief available? We represent the Washington area. We support it. And what do you think the district court should do? You're basically saying we shouldn't look at it. It's hard for me to envision an order that is, we think, that shouldn't be subject to some kind of appellate oversight. You're right. I'm looking at the TRO. Mr. Chancellor, we've got a TRO that, by its terms, we've now received the proposed schedule, and the district court has entered an order, so we know already that this TRO is not to stay in place for more than the 14 days contemplated by Rule 65. So why shouldn't we view this as an injunction? Well, first of all, even in cases where this court has created a TRO, the deadline of the order was no longer in the SBIU case. The Senate decided the order lasted four months. Here the order will be fully, the district court supposedly filed the order as a temporary restraining order. The order got very quick. The order requires to confer and agree on a briefing schedule, and briefing will be complete within 14 days of the executive order. The executive court said it's illogical to go ahead and file this appeal. And, of course, I can speak on that. And the judge, I'm sure, I can speak on that. But I'd suggest this might not be the topic that's most important. The only point I make is that making this part of the law review is just an extremely strict standard, and the important point also is that if the court treats this as an appeal of the order, then that's the appeal of the ultimate. The ruling will be filed, but if the court really treats this as a decision and sends it to the district court, the district court will have the opportunity to get a more full preliminary injunction. One, the district court understands that it's definitely illegal to do that, and that will be what the court will ultimately review, as opposed to reviewing what the court really intended to be, a temporary restraining order. And I will. Mr. Chairman, in your view, this order in place, would there be a preliminary injunction hearing in the district court? Absolutely, sir. Absolutely. The parties have agreed to a briefing schedule. The preliminary injunction motion will be fully briefed back a week from Friday, and the general rule will ultimately be readable quickly after that. I don't believe that the 14-day limit is for ex-parte. Temporary restraining order is back-to-back. It's much better than I expected at the moment. Well, one of the problems with treating this as a temporary restraining order, is that if this were to arise at any time, the court gives us a temporary restraining order after a hearing and can receive a briefing. Now, if you treat it as a preliminary injunction, that's a terrible rule to create for district courts. You said that it discourages you from hearing from the other side before entering a temporary restraining order. But regardless, I do certainly want to hear it, but I don't want to spend all your time on this. And, again, of course, if this is treated as a motion for stay, we obviously still believe that the court should reject that motion. And the most simple basis for that, of course, would be the lack of irreparable harm. I've heard others, again, pressing counsel for a statement of what the irreparable harm is. And so, no clear factual claims or evidentiary claims of what that irreparable harm would be from a state. And, in fact, it was the acting order itself that brought up the irreparable harm to our states, to Washington, Minnesota, and Arizona, and to many other states and people as described in the many legal scripts that have been filed. So, of course, we believe that the article has shown no irreparable harm from reinstating the status quo prior to the affected order. Let's take a look at the state of Washington. From the affected order, we detailed that we were on a irreparable harm charter. We had students at physical universities who were stranded overseas. We had special needs that were separated. We had retired elders who could not travel overseas to visit their families without knowing that they would be able to return. We did not terminate them. We had- So, if I agree with your apparent patriotic theory, then in balancing the harms and thinking about the standards for a state or for a PRO, are we limited to looking at the proprietary interests of the state itself, or can we look beyond that, even if we respect the parent's patriotic theory, or do we use the parent's patriotic theory to expand the harms that we consider? I don't think the parent's patriotic theory is essentially that. Are we limited to independent or not forstanding one, the proprietary powers that we're suffering, and one, the parent's patriotic? So, the question is- So, if I agree with the proprietary theory for standing, does that have any implications for what we generally consider when considering the factors for a PRO and for a stay, or is it just a way to get standing, and how do you consider anything in the public interest that affects the public interest? I think we primarily just go to standing, Your Honor, because I think the harms- Well, I mean, we may not consider the harms and the other harms to be the proprietary activities and the public interest factor of the test, I suppose, in that any standing has to turn into the harms that we consider relevant. So, and again, the- it's not at this point, it's really the summer order of the desk in the court to upset and say, well, we've, you know, things have slowly gone, or we're returning to normal, to the situation before the kill of the executive order, and it's the summer order of the desk in the court to upend that. Let's try this poll again. Yes. Your Honor, I didn't mean to interrupt, but I think it's very critical for the government to repeatedly sort of kind of eliminate the nature of unemployment from our brief, and I think that that's a characteristic of our financial context in a way that's important, because the point we're making in the brief there about unemployment, is that this case is different. So, I mean, in general, it's an important way in that the federal protections here affect, that affect, land title offense of incarceration, and that land title offense, it also affects people who are trying to visit their families, those people who are trying to visit their families. It's the establishment of a violation, it affects, it affects everyone in that case, that's an incident, it's, well, that's important to know, the case files that we have established with those violations on their own show irreparable injury, and we, of course, believe that their agreement is very strong. So, just on that, the state has shown a strong way to become a success, the federal government certainly, the state, I'm sorry, has shown a strong way to become a success, and the federal government certainly hasn't taken its burden on our view of showing a way to become over-employed, unless you have a more functional. Yes, you know, as far as the establishment costs, Frank knows, government takes a position, I think, that, that, you know, you're bringing in, you know, the order that we have here, establishment costs, Frank, you're complying to the four corners of the instrument. Thank you. What's your comment on that? Well, I think that you've brought, I'm sure that we've brought it on, but I think it's logical that you point out what part, I'm sorry, well, it's very resonant, it's an exact opposite, and, of course, we've seen it in the curriculum, yes, it's an exact opposite, but it's the, it's the, I guess, it makes, well, it shouldn't, well, I suppose, of course, the court came up behind the, the bonus, and, in those cases, to stay clear, those were cases where the, the, the case had to do with excluding an alias who had never been here and had no right to be here. So, so, anything, of course, should take a more, a harder look, but the real world is a case where there are significant two-facts. One, people who do live here, who've been here for many years, who are long-time residents, who clearly have entitled themselves to constitutional rights, due process, and equal protection, unlike in Cary and Moondell, where it really was, you know, the, the rights being taken over by the people who were seated, but there, that people here who were asserting them. So, I was going to be very brief about that. The assertion that the court took out for time only because, in the case of Cary versus Dinn, Miss Dinn was a U.S. citizen. How, how, the number of people affected by the executive order, do you have any information as to what proportion would fit within the category of Washington residents, or, or what, what about a percentage of people who appease this? I suspect it's a small fraction. I probably took that from the internet. First of all, we are at the pleading stage. We understand the hypocrisy. We, we file a complaint in a motion for temporary restraining order, and so for standing purposes, we will file a complaint to the American Flag Retreat, which is true. Now we have alleged that there are certain people in Washington, who have been born in Minnesota, who are originally from these countries, who are not yet citizens here. We know the way the order was originally interpreted. Excuse me, Your Honor. As defendants, we originally interpreted the order, and said that it covered lawful permanent residents. We show that there are a lot of people, some of them are actually lawful permanent residents, from these seven countries in the United States. Now, they changed their mind about four times, when I replied to those people, in that, in that, in the order issued. Now, we say that some of the, some of the permanent state permanent is complete. Now, that's not the only thing, there's a sheet of paper about that, and it's like, that argument is being moved out, because under the voluntary cessation standard, it doesn't change the order, to make that principle clear. That's my confusion. You can't just say, well, now we say that's going to apply to them, so don't worry about it. I mean, that's the only way people, who are in the United States, who, over a week, at least, according to the government, initially, lost their right to travel from the United States, to visit their relatives. And so, all people are always asking, why should we limit the order, the temporary restraining order, reach to those people, we've had a strong case for, like the LPRs. Why should, why should the temporary restraining order, reach beyond that? That's changing the government principle argument, that it was overrun. Why isn't it overrun? So, some key reasons are, first of all, limiting the order, that way we try not to cause, cause the order is toxic. So, for example, we would not remedy the order's violation, of the establishment clause, which, for everyone in our state, as well as our states themselves, by favoring, one religious group over another. It would not fully remedy the order's violation, of equal protection for us, because the order will rise, in a discriminatory era, to deny, people who are residents, who are here, the ability to receive visits, from their friends and family, without allowing others, to receive those visits, and so on. So, it wouldn't hurt all the harm. The second point is, our U.S. citizens, and, the U.S. citizens, who are here, who are related to these folks overseas, do have rights, and it would not address their rights, at all, to put it that way. And then, finally, your honor, I just said it, defendants have not explained, how they would work, if we implement, the newer order, that they're now, fully right, which they didn't really propose, in any way before, which would require, some sort of system, for quickly approving travel, in the country, by thousands of people, from the affected countries, who live here, who stay here, who work here, in our businesses, and go out there, to travel, for work, or to visit family. And they, just had to work, from what they described, how they would be able to, do the execution, in order, to address all of our harms. Question. In evaluating, your establishment, clause claims, should we apply, Larson, or Blanton? Your honor, we think, we are under, under attack, but we think, the case is closer, to Larson, because, in Larson, what you had, was a spatially neutral, work clause, it doesn't mention, any religious denomination, by name, but it did focus, on religious groups, and the result of it, was a distinction, between that kind of way, that favored some, and not others. And that's exactly, what we have here. We have an order, that actually, doesn't mention, any denomination, but that, is, is, we don't want to mention, there's three options, already to support, is intended to favor, some religious groups, over others. And, that is, that is exactly the situation, in Larson, you know, the other side of the case, it doesn't mention, a particular determination, on the basis of the document, that Larson doesn't apply, but that's, that's not what Larson, has called status, in Larson, in Larson, in the world, it doesn't mention, a denomination. But here, we also think, that we belong, to the Loan Test, which is explained, in some detail, in your district court briefing, we do not want, for it to have to be, to explain that argument, as well, in the briefing, to this court. If we weren't able, to reach with you, about Larson, is there any reason, to consider your, equal protection claim, or are those claims, essentially redundant? I think, if you, if you agree, with us about Larson, then we probably, need to reach our,   Somebody asked, about the, what's all this, religious discrimination, claim, to reach both, the equal protection, claim, and the, equal protection claim, and the, equal protection, establishment, laws, and science. And, I'm, not entirely persuaded, by the argument, only because, the seven countries, encompass only a, I think a relatively, small percentage, of Muslims. Do you have any, information, as to, what percentage, or what proportion, of the adherence, to Islam, worldwide, are, are citizens, or residents, of those countries? My, my understanding, is exactly, what you're doing, suggests, something less than, 15%. I, I'm not, sure, but, to be clear, given that all those, countries, are countries, that have been previously, tagged as, subjects of concern, about terrorism, granted, it's because of, perhaps radical, Islam sects, so there might be, a religious motivation, behind the terrorism, but I have trouble, understanding, why we're supposed to, infer, religious animus, when in fact, the vast majority, of Muslims, would not be affected, as residents of those, nations, and, where the, concern, for terrorism, with those, connected with radical, Islamic sects, is kind of hard, to deny. Sure, the case law, in that court, in the Supreme Court, is very clear, that's a true religious, discrimination. We do not seek to prove, that this were, harms only Muslims, or religious harms, every Muslim. We seek to prove, that it would be, imputed, in part, by desire, to harm Muslims. We have alleged that, to infer that desire, in fact, the vast majority, of Muslims, are unaffected. Sure, in part, you think it's inferred, from in-depth evidence, I mean, there are statements, that we've quoted, in our complaint, that are, rather shocking evidence, of intent, for discrimination, against some of us, given that we have, discrimination discovery, yet, I mean, we're not dealing, with something private, we're dealing, with a public statement, for which, the presentation, did this, to have advisors, reflecting it, and our strong knowledge, of it, sort of, leading stage, to allow us, to go forward, on that claim. And again, you know, with no type, of discrimination, which requires you, to show, that every single person, out of that category, was harmed by the action, you just have to show, that the action, was motivated, in part, by a desire, to harm that group. And, in a situation, where the proportion, affected, were less, than 15 percent. You're right, in fact, I'd like to add, a couple of things, on that, before the, before the, I'd like to add, a couple of things, on that, in those terms, because, again, we are part of it. Can you deny, that in fact, there is concern, about people coming, from those countries, separate and apart, from what their religion, might be, because, as Congress, and the previous administration, have concluded, those countries, are concerned, from a terrorist perspective. Your Honor, Congress, has determined, that those, teenagers, have determined, that those conditions, have to be taken with you, but, should not, be a waiver, from a visa requirement. But, evidently, to that point, we've been, challenged, by the previous administration, by the previous administration, by the Congress, that's religiously motivated. Your Honor, no, we are not interested, at all, to be possible, to identify these countries, as a source of concurrent, and possibly, as the subject, respective treatment, without, having religious motivation, or discriminatory intent, behind it. Your Honor, both cases, like Mercury, from the U.S. Supreme Court, make very clear, that there was a clause, in the U.S. Supreme Court,  that, in action, that, claimed to be perfectly legitimate, with proper intent, is not legitimate, and is unconstitutional, and should be done, with the desire, to favor one religion, over another. Mercury, made that very clear, and it literally says, the act, in action, could be acceptable, and done, for some reason, and not acceptable, because of others. And here, we've alleged, very falsely, with great detail, that this was done, to favor one religion, over another. And, we should be allowed, to go forward, with that claim, even though, we were not denying, that these cases, could have, theoretically, and, in effect, were previously, shown, for some larger level. I know you saw the reaction, at this stage, you've got to demonstrate, a likelihood of success. So, what is it, that you need us to conclude, you've got a likelihood, of success, of being able to approve, a religious atom, as you allege? Well, Your Honor, I first wanted to, set the precedent, for a complete ban, on the entry, of our books, and then, and, it is that ban. No, we're not saying, that this is a complete ban, on Muslims, entering the country, obviously, I mean, there is, but, I mean, this is, this is, well, what does the advisor, say? Well, he could ask, for a way to, implement a, narrower thing, that would be legal. And, but, the point is that, that was clearly, unmotivating, what we allege, again, yes, it is, we do have a likelihood, of success, but at this stage, the case file is clear, our, our, our allegations, our thinking, is true, for assessing, that likelihood, of success, and, and, I cannot possibly, be true, we are supposed to, take your word for it, the fact that you, made an allegation, in the complaint, and, that equals likelihood of success, you don't really mean that, do you? Well, you know, what I, what I mean is, that, the, we, we allege, I have to believe, everything you allege, and say, well, that must be right, that's, that's standard. Do you actually, explore any validation, whether it's evidence, how to do it? We have, we have a number of, allegations, whether it's evidence, yes, we have a number, a number of, straight, that we have, and, and, at the board, there's much evidence, especially considering, that we, there are, that's sort of between our filing, our complaint, was filed, a week ago, a month or day, together with, temporary restraining order, motion, together with the declaration, so, so, all these cases, that, that, we had extraordinary, opportunity to actually, get out there and present our, report. So, I'm going to go to the government, for exactly the same thing, don't tell us to eat more time, because the government brought the stay motion, but don't tell us to eat more time, you're the one that brought the temporary restraining order. You need to get out of here, and present the record, and get out. And that's, don't tell us, maybe you'll gather it later, if, if you can't demonstrate, the likelihood of success, with what you've got in the record so far, and maybe you can, I'm not saying you can't, but so far, I haven't heard a lot of reference, to evidence, and a lot more reference, to allegations, and I don't think, allegations have been done, at this stage. So, I mean, if, if that's the case, and if that's the case,  Then, that's the case. Okay. Okay. The motion of course, is a motion per say, who has the burden of, showing likelihood of success? Well this work, now we're going to have to, follow the guidance, to have the show, that they're likely to succeed on the appeal. We have the burden of the district court of Chicago, of getting the success on the merits, but the state standard, is very clear, that it's the party that's seeking a say, that has to show, the likelihood of success on the appeal. And, and we believe, that it would be more appropriate, to treat this as a mandate of action, where they would have to show, a clear and indisputable right, to release. And in part, we think that because, if you doubt, that it's the district court's, temporary restraining order, that the federal government, is going to ultimately, is the, is the order to be appealed from, ultimately. And that's just not proper, given that, in that a form or substance, or intent, was not meant to be, a preliminary injunction order. It was meant to be, a temporary restraining order, and the district court, was very clear about that. And, the district court's not an opportunity, to consider the preliminary injunction, or even to issue, a preliminary injunction, order. I think, that could be reviewed, during the district court. I mean, it's not more evidence, that it's necessary though. I mean, I think, most district claims, are going to have to know, how we're doing anyway. So, I don't know, if we really need to wait, for the district court, to do more, and less, more evidence, that's going to be released. Well, for me, it's not, well, we do have time, to put out, some additional declarations, of evidence, in the district court, if given another opportunity. I think, it's also important, for fairness, to make appearance, to the district court, itself. The district court, should have an opportunity, to consider, something that, actually thinks, is a preliminary injunction order. So that, the evidence, have a more, sort of, issue, an order, that's framed up, as a preliminary injunction order, that is ordered, to be reviewed. And, I guess, I just ask that, if you decide not to do that, if you decide to treat this, as a preliminary injunction ruling, instead of state motion, I'm going to ask you, to issue an opinion, that treats it, like a preliminary injunction, ruling, and that gives it, sort of, consideration, that you would want, that it reviewed with, because the other side, the court, has already made it very clear, that they intend to seek, a future review, if this court, decides to say, June, of course, June, it would be, it would be, unfair to this court, and to the district court, to have the federal government, transit, to the U.S. Supreme Court, and, if an order, that was explicitly framed, as a temporary restraining order, there's a joint, understandably, issued, assertion, they should, issue a reason, to be able, to take care of this concern, or is there a concern, beyond that? I think, that would, address, much of the concern, Your Honor. I would ask, that you do either one, or the other. I mean, I do think, that it would be better, procedurally, and more, in keeping with the process, to send the case back, to the district court, to sign this, temporary restraining order, to allow, for the, notice, that we would support, the monetary injection motion, and to allow the district court, to issue a monetary injection, rule line. I'm not sure, if they do that. I mean, I do think, a reason, would be good, to address that concern. Can you tell us, whether your further evidence, would be more about, standing, or more about, the direct proposal? Your Honor, I think it would be, primarily, just slightly more, detailed, about standing, at this point. Again, we have, of course, a difficulty, with a claim, that's about intent, is that we've made, these are ideations, that we haven't had, any discovery, yet, until realistically, you know, we'll take some time, to get it up, for example, a few important statements, and this court has settled, and so has the U.S. Supreme Court, that when the case, has to do with intent, you know, it's, well, it's very, it's remarkable, that you have, this much evidence, of intent, without any discovery, I think, is probably the best way, to characterize it. So I think that, the court should keep, that in mind, and assess, what we say, is success. We've taken you down, to four minutes, is there, anything you'd like, to conclude with? No, no, no, no, no, no, no, no,         no, no, no, no, not yet, not, yet, but, I guess that's one of, two reasons why I was, like to make the report, we also have, a two-story cliff, under the George Stoneman, and the Cheney Act, even, I think, we, I mean, we believe that our articles, the statutory ground, was a helpless only, with regard to those, seeking immigrant visas, am I correct? Uh, no, so, I think that is partially correct, I think that is basically correct, but, all you have to do is speak to, immigrant visas, and, and, there cannot be, discrimination based on nationality, and, and history of those visas, and, and, I'm not sure, that would be totally, that's not really the way, of how to look at all of your constitutional, it's not writing everybody, covering everything. Everyone. That's what, that's what I wanted to, allow you to avoid all the Constitutional issues, but, I'm gonna just always put that right, that we believe it is, a, a very strong claim, that the orders, of mileage, on the situation, can, in an interim service, I think it's important to, I think that's an important point, because it goes to what level of preference, is owed, to the executive, of course, the, the President's position, that, he's acting, personally, to the traditional relationship, of authority, to our position, and in fact, he'll be acting, contrary, to what Congress, has said, to the, every single member, every single person, who's harmed by the order, it's an important factor, to consider, in deciding, how much preference, to give, to the executive, on this point. Well there have been, presidential orders, in the past, by prior Presidents, that treated people, based on, their nation. Um, why does, why shouldn't that suggest, to us, that the, the statutes, should be harmonized, in a way, other than the one, that you're advocating? Well, there are, a couple of orders, have been there, or are still being there, or, and I want to hear, exactly the same though, I mean, to say more about Cubans, because they're from Cuba, that's doing it, by class, based on nationality, and, I haven't heard, any citation, or reference, to a legal challenge, to that, or an argument, that, I think that was President Reagan's, that what he did, wasn't appropriate. Uh, there were others, saying about individual countries, hadn't been a challenge to that, why do we decide, that Congress, in enacting, 1152, that's the number I've been using, mental amend, or, or partially repeal, 1182? There were, uh, two points, the one, like you pointed out, there have not been cases, about those, about those issues, so there's not, well that, may have been, just like that, but much narrower, than that, there's no degree, that there has been, something that's, uh, it's like much narrower than here, um, but, but again, every one of those examples, involved, uh, much more narrow, hearing than we have here, and also, the other issue, is the same, can you treat people, based on the nation they come from, and foreign policy, or foreign affairs, knew all the time, we treat people from, North Korea, differently than we treat people from France, and so I have trouble understanding, your interpretation, of 1152, as prohibiting, what seems to be commonplace, in foreign affairs. There are 1182 exceptions, with a number of exceptions, that allow, uh, for, uh, it's a law, that's not allowed, to detain people, for security related reasons, and some other reasons, uh, but, but, North Korea, is sort of, across the board, with that exception policy, that applies, to children, to grandmothers, to people, who don't show, harmful threat, whatsoever, to, to this country, uh, so, so, I guess I just thought, the court, absolutely, said that, uh, it does, frankly, especially, because I do think, it goes, it, it, it helps, right, um, that, that, that the court can review, this order, the court should review, this order, and, it should give it, the constitutional, and, that's for it to review, that, that, it serves. If people were to ask, for their questions, we would ask, that you, drop them in,     on the contact list, on the, on the phone. Thank you. Thank you. Let me turn this over to, Miss Reynolds so that, I can give you five minutes, for her help. Thank you very much, Your Honor, I just want to, address a couple of quick points, first, being, you know, whatever, being, says, about looking, at consular decision making, does not suggest that we, look behind the, national security, determination, made by the President, where that determination, that the four corners, of that determination, are explicitly, based on, the Congressional determination, that the countries at issue, are of concern, and doesn't really, go beyond that. I'm sorry, I'm using, Anne and Mandel, as your main authority, for the, the other two abilities, and so,  those are distinguishable, I don't know if you, think you're relying, on those pieces or not. We are, definitely relying, on the, on the, on the, on them, for the limits, that courts review, these, these types of issues. I'm happy, that when you have, the document itself, and has the best evidence, of being sent to the President, relies exclusively, on the, calls made by Congress, and the administration in 2016, about the safety concerns, presented by, the specific countries at issue, that is, the end of the inquiry, and should be. In fact, I, you know, the, on the other side, side of this court's recent, Cardenas decision, and there, describing the state of the law, the court very clearly said, that Congress could have, injected a blanket prohibition, on, on, on, on, I think it was, describing Mandel, on communist aliens, and that is, in here, we have the President, making a, a categorical determination, based on, the identification of countries, of concern, and there's nothing astray. The answer to the question, that was asked earlier, about what are the orders, that, that, that you've been, analogizing to, cases that were about, people who, were communists, who advocated overthrowing, the U.S. government, are you saying that, that the, the external evidence here, that is alleged, that, that the, that with the, the Muslim, is, is it complete. If, if there were an external order, that prevented, the entering of Muslims, that there would be, people withstanding, the challenge that, and I, I think that would raise, establishment clause, first amendment issues. It's not the, order we have here. This order, is limited to the countries, defined by Congress, and let me, the value G,  . I think my point is a little narrower that in the expedited procedure of a TRO, taking this extraordinary action of halting this order that the president determined was in the national security interests of the United States is a unanimized course and it should be standard. If we thought there was a problem with the preliminary, if we let this be forwarded to a preliminary injunction hearing, do you have evidence that you would present? I think we definitely would like the opportunity to present evidence in the district court, and we also think that the scope does not really have to be. Do you have anything about the type of evidence you would present? Another point is the scope of the suit and injunction would really need to be narrowed as the parties focus on the actual harms. The harms that Washington has cited focus on residents of Washington, but the order goes way beyond that to the areas of the most concern of the president, people who have never been to this country yet and have no connection to Washington, no connection to the United States, and no claim of constitutional rights, either on their own or through Washington. If I can ask my colleagues, that does raise a serious concern on my part, and the scope of the order most obviously having to do with the lawful permanent residence, which the government's position now is they're not included in the scope of the order. I have to say, is there any legal authority for the counsel of the president to have power to instruct the other departments or to instruct us what the order means? I mean, the president can amend the order, but I'm not sure that the counsel of the president has that authority. So why is it we need to be looking at this reconceived order, and why is it we should, rather than try to narrowly carve out the injunction you're trying to write such an order? Why shouldn't we look to the executive branch to more clearly define what an order means, rather than have to look through the lens of recess and interpretations? I think I make two points there. One, the guidance from the White House counsel is the decision interpretation of the order, and the White House counsel speaks for the president in this case.  if you look at the original reply brief at the very end on page 11, we had our kind of suggestion for the kind of order that would actually address the harms identified by Washington. Today I'm going to read that. At most, the injunction should be limited to the class of individuals on whom the state's claims rest, previously admitted aliens who are temporarily abroad now or who are talking about an injunction entered on such a preliminary basis. It should be limited to the claims that the state is making and not issued more broadly. If there are no further questions, I encourage the court to stay the injunction or to limit it to the presentation of the state of Washington. Thank you. Thank you. Counsel for your very helpful argument. This matter is submitted, which appreciates the importance of this time sensitive nature of this matter and will endeavor to meet our decision as soon as possible. Thank you again for appearing in such short notice. We are adjourned. Court, this session stands adjourned.
judges: Canby, Clifton, Friedland